UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMY COOPER,

                    Plaintiff,

            v.

FRANKLIN TEMPLETON, FRANKLIN
TEMPLETON INVESTMENTS,
FRANKLIN RESOURCES, INC.,
FRANKLIN TEMPLETON COMPANIES,
LLC, JENNY JOHNSON, FRANKLIN
TEMPLETON CORPS. XYZ 1-10, JOHN
DOES and/or JANE DOES 1-10,

                    Defendants.

No. 21-CV-4692 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Amy Cooper, a white woman, was formerly employed by Defendant Franklin Templeton in New York as a Portfolio Manager. On May 25, 2020, she was involved in a confrontation with birdwatcher Christian Cooper, a black man, while walking her dog in Central Park. Video footage of the encounter was posted to Facebook and Twitter later that day. The video quickly went viral—garnering millions of views—and earned Plaintiff the moniker "Central Park Karen" on social media. The next day, Franklin Templeton announced that it had conducted an internal review of the incident and terminated Plaintiff's employment.

On May 25, 2021, Plaintiff brought suit against various Franklin Templeton entities and their CEO, Jenny Johnson, asserting claims for discrimination on the basis of race and sex, defamation, intentional infliction of emotional distress ("IIED"), and negligence. Now before the Court is Defendants' motion to dismiss the First Amended Complaint (the "complaint" or "FAC") for failure to state a claim. For the following reasons, the motion is granted.

## BACKGROUND

The following facts are drawn from the complaint and are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

*The Incident*

On May 25, 2020, Plaintiff was involved in an altercation with Christian Cooper, a black man, while he was birdwatching and she was walking her dog in Central Park. FAC ¶ 1. The confrontation, which Plaintiff claims caused her to fear for her safety and that of her dog, culminated in Plaintiff placing a 911 call, during which she told the police that there was "an African-American man threatening [her] life." *Id.* ¶¶ 66, 68; Speights Decl. Ex. A (transcript). A video of the encounter was shared on social media that same day; it quickly went viral and "became international news as a racial flashpoint." FAC ¶ 1. Plaintiff was soon branded a "privileged white female 'Karen'" by the media and social media users. *Id.*

*The Aftermath*

On the night of the Central Park incident, Franklin Templeton—Plaintiff's then-employer—published the following statement on Twitter concerning the incident:

> We take these matters very seriously, and we do not condone racism of any kind. While we are in the process of investigating the situation, the employee involved has been put on administrative leave.

*Id.* ¶ 8. The next afternoon, Franklin Templeton tweeted an update, which read:

> Following our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton.

*Id.* ¶¶ 9-11; Speights Decl. Ex. J (the "May 26 Statement").

Plaintiff alleges that, as part of its "investigation" into the Central Park incident, Franklin Templeton communicated with her on the day of the incident. FAC ¶ 36. It did not, however,

2

interview or seek to interview Mr. Cooper about it. *Id.* ¶¶ 38-39.  Nor did it obtain a recording of

Plaintiff's 911 call from the police, or minutes from New York City community board meetings

pre-dating the incident that allegedly pertained to prior altercations in Central Park between Mr.

Cooper and other dog owners. *Id.* ¶¶ 44, 49.  Franklin Templeton also did not interview Jerome

Lockett, one such dog owner, who allegedly had a similar run-in with Mr. Cooper in Central Park,

*id.* ¶¶ 52-61, and who emailed a statement about that encounter to NBC on May 26, 2020, *see* FAC

Ex. A.

In the months following the Central Park incident, the President and CEO of Franklin

Templeton, Jenny Johnson, referenced or spoke about the incident in several public interviews.  In

a June 2, 2020 interview with Bloomberg regarding the company's decision to terminate Plaintiff,

Johnson said:

> I just have to commend [] our crisis management team, it was a holiday.  Everybody got
> together.  We needed to spend time getting the facts.  Sometimes videos can get
> manipulated and so you have to make sure that you've reviewed all the facts.  I think the
> facts were undisputed in this case, and we were able to make a quick decision.

*Id.* ¶ 17; Speights Decl. Ex. N (the "June 2 Statement").  And in a July 6, 2020 interview with

Fortune Magazine, she stated: "[Defendants] espouse zero tolerance for racism."  FAC ¶¶ 21-22;

Speights Decl. Ex. O (the "July 6 Statement").

*The Instant Action*

Plaintiff alleges that Defendants fired her on account of her race and gender, and brings

claims for discrimination on the basis of race under 42 U.S.C. § 1981 ("Section 1981"), as well as

discrimination on the basis of race and gender under both the New York State Human Rights Law

("NYSHRL") and New York City Human Rights Law ("NYCHRL").  She further asserts that

Defendants' public statements in response to the Central Park incident were defamatory.  Her

complaint also contains IIED and negligence claims, which she has since withdrawn.  Defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor.  *Ofori–Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006).  Courts, however, "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  They are also not "constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent*, 151 F. Supp. 2d at 405-06.

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

4

**DISCUSSION**

**I.    Race & Sex Discrimination**

The Court first addresses Plaintiff's allegations that Defendants fired her because of her race and gender, in violation of Section 1981, the NYSHRL, and the NYCHRL.

**A.  Section 1981 and NYSHRL**

Discrimination claims under Section 1981 and the NYSHRL are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). "The *prima facie* case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). At the motion to dismiss stage, "the plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn v. City of N.Y.,* 795 F.3d 297, 311 (2d Cir. 2015). Rather, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified [for the job], suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). In this case, the parties appear to dispute only the last element: whether Plaintiff has pled sufficient factual content giving rise to a "minimal inference of discriminatory motivation." *Littlejohn,* 795 F.3d at 311.

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically [or sexually] degrading terms; or its invidious comments about others in the employee's protected group." *Id.* at 312. Plaintiff argues that "Defendants' own words and actions provide the required plausible support for a minimal inference of discriminatory motivation." Opp. at 16. Specifically, she contends that

5

Defendants "implicated the race of their employee with each of [their] communications to the public, by repeatedly connecting [their] stated stance against racism with their termination of [] Plaintiff." *Id.*

This argument merits little attention. None of Franklin Templeton's public statements made any mention of Plaintiff's race. *See Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008) (noting that Title VII will only support a claim by an "employee [who] suffers discrimination because of the employee's *own* race") (emphasis in original). Defendants' repeated condemnations of racism, moreover, did not "implicate [Plaintiff's] race" because—as the Second Circuit has squarely held—"'[r]acism' is not a race, and discrimination on the basis of alleged racism is not the same as discrimination on the basis of race." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013). "[A] statement that someone is a 'racist,' while potentially indicating unfair dislike, does not indicate that the object of the statement is being rejected *because of his race*." *Id.* (emphasis in original). Plaintiff's complaint thus fails to allege that Defendants made any remarks, whether publicly or privately, that could be viewed as directly reflecting discriminatory animus.

In the absence of direct evidence of discriminatory intent, a plaintiff may also "raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees." *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, *6 (S.D.N.Y. Jan. 25, 2019). But in order to do so, the plaintiff "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations omitted); *see also Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) ("To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all

6

material respects.").  Here, Plaintiff argues that she has made an adequate showing of disparate treatment by identifying three male comparators—one of whom is non-white—who were treated more favorably than she was after engaging in purportedly similar conduct.  Specifically, she points to: (1) Vivek Kudva, an "Indian male" and "head of Franklin Templeton's Asia Pacific distribution," who was fined and subjected to a market ban for insider trading by the Securities and Exchange Board of India, FAC ¶¶ 29-31; (2) C.K., "an executive in the Financial Institutions group," who allegedly "offended" a client at a conference by "insisting he wanted to go somewhere to meet women or to an adult entertainment venue," once "plagiarized a competitor's presentation materials," and was accused of sexual harassment in the workplace, *id.* ¶¶ 109-12, 117, 125; and (3) Chuck Johnson, a former member of Franklin Templeton's board of directors, who was appointed to the position in 2013 notwithstanding his 2002 conviction and two-month incarceration for a domestic violence incident, *id.* ¶¶ 104-08.  According to Plaintiff, none of these individuals was terminated from his position after his alleged misconduct.

The Court agrees with Defendants that Plaintiff has not plausibly alleged that she and her selected comparators were similarly situated in all material respects.  What constitutes "all material respects" varies from case to case, but "the plaintiff and those [s]he maintains were similarly situated [must have been] subject to the same workplace standards" and must have engaged in conduct of "comparable seriousness."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). This requires "a reasonably close resemblance of . . . facts and circumstances."  *Id.*  Although "[w]hether employees are similarly situated is ordinarily a question of fact . . . if there are many distinguishing factors between plaintiff and the comparators, the court may conclude as a matter of law that they are not similarly situated."  *Watson v. Geithner*, Nos. 09-CV-6624, 10-CV-3948, 10-CV-7282, 2013 WL 5420932, at *10 (S.D.N.Y. Sept. 27, 2013) (internal quotations omitted).

First, Plaintiff has not pled that she and the three comparators she has identified were similarly situated in terms of position, seniority, job responsibilities, business unit, performance, length of experience, or even geography. Indeed, two of the individuals were executive-level employees, one of whom was employed by the company in India and the other in an undisclosed location; the third was a member of Franklin Templeton's board of directors and thus not an employee of the company at all. These individuals occupied roles that were "vastly different on their face," Motion at 11, from Plaintiff's role as a Portfolio Manager in Defendants' New York office. Plaintiff has thus failed to demonstrate that her selected comparators "were subject to the same performance evaluation and discipline standards." *Graham*, 230 F.3d at 40; *see also Shumway*, 118 F.3d at 64 (holding that comparators were not similarly situated because, among other things, they reported to different supervisors); *Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724, 2009 WL 3154312, at *4 (S.D.N.Y. Sept. 30, 2009) (finding selected employees not appropriate for comparison because, among other things, they held job titles that were different from the plaintiff's job title); *Taylor v. Seamen's Soc. For Child.*, No. 12-CV-3713 (PAE), 2013 WL 6633166, at *14 (S.D.N.Y. Dec. 17, 2013) (finding comparator not similarly situated with respect to her job responsibilities because she worked in "Accounts Payable" while the plaintiff was a "Payroll Bookkeeper"); *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) ("Plaintiff nonetheless fails to allege how or why a Lieutenant—an officer with a different job title—is similarly situated to a Detective or Patrol Officer."); *Akinyemi v. Chertoff*, No. 07-CV-4048 (AJP), 2008 WL 1849002, at *5 (S.D.N.Y. Apr. 25, 2008) ("Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated.").

8

Second, Plaintiff must "show that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham*, 230 F.3d at 40; *Shumway*, 118 F.3d at 64 (same); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."). The misconduct that Plaintiff's proposed comparators allegedly engaged in— which runs the gamut from plagiarism to insider trading to a felony conviction—is simply too different in kind to be comparable to her conduct in this case. *See Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*, No. 13-CV-5138 (NSR), 2015 WL 2151827, at *3 (S.D.N.Y. May 7, 2015) ("Less severe punishment for . . . qualitatively different misconduct does not raise an inference of discrimination."). The complaint does not allege, for instance, that any reports of the comparators' conduct became—or even came close to becoming—"international news as a racial flashpoint," as Plaintiff herself described the Central Park incident. FAC ¶ 1.

Plaintiff insists that the only similarity that matters is her and her comparators' shared employment by Franklin Templeton, because she is challenging "a company-wide double standard between males who receive[d] no scrutiny or discipline for alleged wrongdoing, and a female who instantly received the ultimate punishment." Opp. at 18. Plaintiff cites to no case, however, in which a court found that mutual employment by the same company—without more—is sufficient to render two individuals "similarly situated," nor is the Court aware of any such authority. Under her construction of the "similarly situated" standard, an inference of discrimination may arise whenever two employees of different races or genders work at the same company and are disciplined in unequal ways for misconduct, even if they have vastly different jobs, different work

9

locations, and different supervisors, and even if they committed entirely different offenses.[2]  Not so.  Especially where, as here, the company in question employs thousands of employees around the world, Plaintiff cannot plausibly allege that she was subjected to a "company-wide double standard" merely by identifying three male comparators who engaged in some—other—form of misconduct, but were not similarly fired.

Plaintiff further asserts that she suffered a distinct adverse employment action in the form of Defendants' failure to "perform[] a thorough investigation into the allegations of [her] wrongdoing," FAC ¶ 97, in contrast to the procedure they purportedly followed with respect to Vivek Kudva.  This argument is unavailing for the same reason: Plaintiff's named comparator cannot be considered "similarly situated" in all material respects.  Without more factual support, her claims that Defendants would have performed a more thorough investigation but for her race and gender, *id.* ¶¶ 82, 89, are mere conclusory assertions not entitled to the presumption of truth at this stage.  Plaintiff's dissatisfaction with the adequacy of Defendants' investigation—even if objectively warranted—is insufficient to support an inference of discrimination.  *See Jones v. Gen. Bd. of Glob. Ministries of United Methodist Church*, No. 96-CV-5462 (HB), 1997 WL 458790, at *2 (S.D.N.Y. Aug. 11, 1997) ("[P]laintiff['s] attempts to challenge the validity of the investigation . . . may prove that the investigation was poorly conducted and that plaintiff was unfairly discharged, [but] it does not raise an inference of discrimination based on race or sex.")

---

[2] Plaintiff argues that similarities in job title, department, seniority, and the like are not material in a case that is not about entitlement to a higher salary or a swifter promotion, but discriminatory discipline.  Opp. at 18.  This argument is undercut by the wealth of cases in this circuit where such similarities were found to be material, even in cases concerning allegedly unequal discipline for similar misconduct.  *See, e.g.*, *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (finding it significant that the plaintiff "established that she and [her comparator] held positions of roughly equivalent rank").

10

Because Plaintiff has failed to plead factual content giving rise to even a "minimal inference of discriminatory motivation," *Littlejohn,* 795 F.3d at 311, her Section 1981 and NYSHRL claims are dismissed.

### B. NYCHRL

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). NYCHRL claims are to be reviewed more liberally than their federal or state counterparts, and the provisions of the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* Nonetheless, the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive . . . [s]he must show that she has been treated less well at least in part '*because of* her gender' [or other protected characteristic]." *Id.* at 110 (emphasis in original).

Even under the lower standard set by the NYCHRL, Plaintiff has failed to plausibly plead that she was fired "because of" her race or gender, or present "any facts that would give rise to such a connection." *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016). Accordingly, her NYCHRL claim is dismissed as well.

## II. Defamation

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). To state a claim for defamation under New York law, a plaintiff must allege "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019). Although a jury determines if a plaintiff has been

11

defamed, "[w]hether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000); *see also Biro*, 883 F. Supp. 2d at 457 (explaining that New York courts encourage the resolution of "defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms'").

"[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Giuffre v. Maxwell*, No. 15-CV-7433 (RWS), 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017) (citation omitted). Thus, in order to survive a motion to dismiss, a complaint "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

Because there is, however, "no such thing as a false idea," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974), courts are tasked "with distinguishing between statements of fact, which may be defamatory, and expressions of opinion, which 'are not defamatory; instead, they receive absolute protection under the New York Constitution,'" *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15-CV-4779 (LTS), 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (quoting *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014)); *see also Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) ("[F]alsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false."). In conducting this inquiry, a court must consider "what the average person hearing or reading the communication would take it to mean" and "the context of the entire communication and of the circumstances in which they were spoken or written." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (N.Y. Ct. App.

1986).  To assist with distinguishing between a statement of fact and opinion, New York courts look to three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006) (quoting *Gross*, 82 N.Y.2d at 153).

The allegedly defamatory statements at issue in this action are: (1) Defendants' May 26, 2020 announcement on Twitter that they conducted an "internal review of the incident in Central Park" before terminating Plaintiff and that they "do not tolerate racism of any kind," FAC ¶¶ 9-11; Johnson's June 2, 2020 statement in an interview about the incident that she "[thought] the facts were undisputed in this case," *id.* ¶ 17; and her July 6, 2020 assertion in another interview that "[Defendants] espouse zero tolerance for racism," *id.* ¶ 22.

Plaintiff argues that Defendants' announcement on May 26 that they had conducted an "internal review" of the Central Park incident was false because in reality, "no investigation was performed." Opp. at 29.  Plaintiff has failed to plausibly plead that the factual assertions contained in that statement were not "substantially true."  She does not allege that Defendants did not watch the viral video of the incident—indeed, her counsel appeared to concede at oral argument that they had—nor that Defendants did not have some kind of internal discussion about Plaintiff's conduct in the video prior to firing her.  Such acts suffice to meet a reasonable interpretation of "internal review."  Further, Plaintiff's assertion is belied by her own allegation that Franklin Templeton, at the very least, "communicat[ed] with Plaintiff about the May 25, 2020 incident in Central Park . . . on May 25, 2020."  FAC ¶¶ 36-37.  And Defendants' statement

did not "ha[ve] the effect of[] conveying that Franklin Templeton had performed a thorough and

fair investigation," *id.* ¶ 14, as she contends, because Defendants never used the words

"thorough" or "fair." Plaintiff may take issue with the sufficiency of Defendants' investigation

into the incident, but she has not plausibly alleged that no investigation was conducted at all.

To the extent that the first and second sentences of the statement can be read together as

calling Plaintiff a racist, or characterizing her conduct on May 25, 2020 as racist, the statement is

inactionable as protected opinion. It is well-established that an accusation of bigotry is a protected

statement of opinion, rather than a defamatory statement of fact capable of being proven true or

false. *See, e.g.*, *Cummings v. City of New York*, No. 19-CV-7723 (CM) (OTW), 2020 WL 882335,

at *20 (S.D.N.Y. Feb. 24, 2020) ("Statements describing Plaintiff or Plaintiff's Lesson as 'racist'

are dismissed because they are nonactionable statements of opinion."); *Doe #1 v. Syracuse Univ.*,

468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020) ("A reasonable reader could not conclude that

Chancellor Syverud's statements that the videos were racist, anti-Semitic, homophobic, sexist, and

ableist conveyed facts about Plaintiffs, rather than his opinion about what the videos depicted.");

*Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (N.Y. App. Div. 2015) (affirming the lower

court's holding that articles that described materials authored by the plaintiff as "racist writings"

were "such that a reasonable reader would have concluded that he or she was reading opinions,

and not facts, about the plaintiff"); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 554 (S.D.N.Y. Aug.

20, 2020) ("A reasonable reader would likely view Defendant's reference to Plaintiff's tweet as

'xenophobic' to be her opinion and not conveying any objective facts about Plaintiff."); *Ratajack*

*v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 165

(S.D.N.Y. 2016*)* (finding statements in which the defendant "articulated concerns that Plaintiff

was a racist or a future threat to others" to be nonactionable opinion). And Defendants cannot be

14

liable "for simply expressing their opinion . . . no matter how unreasonable, extreme or erroneous these opinions might be." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1306 (N.Y. Ct. App. 1977).

Plaintiff argues, however, that "Defendants committed defamation not by calling the Plaintiff a racist, but by implying that they determined her to be a racist based upon an investigation which revealed facts undisclosed to [their] audience." Opp. at 21. Plaintiff is correct that there is a distinction between expressions of pure opinion, which are actionable, and statements of "mixed opinion," which are not. *See Steinhilber*, 68 N.Y.2d at 289-90. "A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based . . . [or] does not imply that it is based upon undisclosed facts." *Id.* at 289. A "mixed opinion," by contrast, is a statement that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Id.* The determination of whether a statement constitutes a pure opinion or a mixed opinion is a question of law for the Court, and one which must be answered by considering, "in the context of the entire communication and of the circumstances in which they were spoken or written," whether the average listener would "reasonably underst[and] [the opinion] as implying the assertion of undisclosed facts justifying the opinion." *Id.* at 290.

Nothing about Defendants' May 26 Statement suggested that the opinions contained therein rested on facts undisclosed to the audience. Defendants' words, on their face, did not indicate or even imply that they considered any information not already known to the public, or sources not available to the public, in conducting their "internal review" of the incident. A consideration of the circumstances surrounding the statement further underscores that notion. Plaintiff acknowledges that the video of her encounter with Mr. Cooper became "international news as a racial flashpoint." The incident received heightened media and public scrutiny, in

15

particular, because it took place "in the midst of an ongoing national reckoning about systemic racism," Motion at 17.  In fact, the Central Park incident coincided exactly with the date of George Floyd's murder in Minneapolis, an event which similarly sparked intense discourse nationwide on issues of racial justice and policing.  *See Brian v. Richardson*, 87 N.Y.2d 46, 52 (N.Y. Ct. App. 1995) (emphasizing that "surrounding circumstances comprising the 'broader social setting'" in which a statement is made is a "useful gauge[] for determining whether a reasonable reader or listener would understand the complained-of assertions as opinion or statements of fact").  The contents of the viral video, as well as the dialogue surrounding it both in the media and on social media, were already matters of public knowledge when Defendants' May 26 tweet was posted.  *See Gisel v. Clear Channel Commc'ns, Inc.*, 94 A.D.3d 1525, 1526 (N.Y. App. Div. 2012) ("Because Lonsberry's statements were based on facts that were widely reported by Western New York media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts.").  Because Defendants' statement did not imply the existence of undisclosed facts—rather, a reasonable reader would have understood it to be based on widely disseminated facts in the public domain—it is protected as pure opinion.

Finally, Plaintiff's theory of defamation as to Defendants' June 2 and July 6 Statements—that they "had the effect of[] conveying that Franklin Templeton had performed a thorough and fair investigation, and that the result of the investigation concluded that Plaintiff was a racist," FAC ¶¶ 20, 25—is the same as its theory with respect to the May 26 Statement. Neither of those statements included a suggestion that Defendants' opinions were based on facts unknown to the audience.  They are thus also inactionable as pure opinion.

Under these circumstances, Plaintiff has failed to state a cognizable defamation claim. As a result, her defamation claims are dismissed.

16

## III.   Remaining Claims

Plaintiff did not respond to Defendants' arguments in support of their motion to dismiss her remaining claims for IIED and negligence, and counsel acknowledged at oral argument that he was withdrawing those claims.[3]   The IIED and negligence claims are therefore dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the action is granted.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 25 and close this case.

SO ORDERED.

Dated:     September 21, 2022
           New York, New York

_____
Ronnie Abrams
United States District Judge

---

[3] To the extent those claims have not been formally withdrawn, they have nonetheless been abandoned. *See Robinson v. Fischer*, No. 09-CV-8882 (LAK) (AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Youmans v. Schiro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims."); *Martinez v. Sanders*, No. 02-CV-5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned.").