# 22-2763

## In the
## United States Court of Appeals
## For the Second Circuit



**Amy Cooper,**
*Plaintiff–Appellant*

v.

**Franklin Templeton Investments, Franklin Resources, Inc., Jenny Johnson, Franklin Templeton Companies, LLC, Franklin Templeton,**
*Defendants–Appellees*

**Franklin Templeton Corps. XYZ 110, John Does, Jane Does 1-10,**
*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

*Attorneys for Plaintiff-Appellant:*

ANDREA PAPARELLA
LAW OFFICE OF ANDREA PAPARELLA, PLLC
4 Dunlap Street
Salem, MA 01970
Telephone: (617) 680-2400
Facsimile: (914) 462-3287
Email: amp@andreapaparella.com

MATTHEW ROYE LITT
LITT LAW, PC
789 Farnsworth Avenue
Bordentown, NJ 08505
Telephone: (908) 902-7071
Email: MLitt@LittLaw.net

## <u>TABLE OF CONTENTS</u>

JURISDICTIONAL STATEMENT…………………………….    1

QUESTIONS PRESENTED…………………………………….    2

STATEMENT OF THE CASE…………………………………    5

    A. Preliminary Statement and Summary of Argument….    8

    B. Statement of Undisputed Material Facts……………    9

    C. Proceedings Below…………………………………….    17

STANDARD OF REVIEW……………………………………    19

LEGAL ARGUMENT…………………………………………    21

    A. The Defendants' Statements are Textbook Actionable Mixed Opinion Because They Imply a Basis in Undisclosed Facts to the Reasonable Reader…………………………………….    21

    B. Even if Arguendo Subject to the Heightened Standard, Defendants' Statements Constitute Actual Malice……    31

    C. The Plaintiff's Allegations of Employment Discrimination far Exceed the Plausibility Threshold Required to Survive a Rule 12(b)(6) Motion…………………………………………….    36

CONCLUSION………………………………………………….    48

CERTIFICATE OF COMPLIANCE……………………………    49

# <u>TABLE OF AUTHORITIES</u>

## Cases

<u>600 W. 115th St. Corp. v. Von Gutfeld</u>, 80 NY2d 130 (1992)...................28

<u>Absolute Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60 (2d Cir. 2012)........................................................................... 19

<u>Afftrex, Ltd. v. Gen. Electric Co.</u>, 161 A.D.2d 855 (3d Dep't 1990)..24, 25

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)...................................... 19, 37, 38

<u>ATSI Comms., Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87 (2d Cir 2007).....37

<u>Barrett v. Forest Labs., Inc.</u>, 39 F. Supp. 3d 407 (S.D.N.Y. 2014).........42

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)....................................37

<u>Bennett v. Health Mgmt. Inc.</u>, 92 A.D.3d 29 (N.Y. App. Div. lst Dept 2011) ................................................................................40

<u>Biro v. Conde Nast</u>, 807 F.3d 541 (2d Cir. 2015) ..............................34, 35

<u>Brian v. Richardson</u>, 87 N.Y. 2d 46 (1995) ........................8, 22, 24, 26, 27

<u>Brimelow v. New York Times Co.</u>, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ....................................................................................33, 34

<u>Celle v. Filipino Reporter Ent., Inc.</u>, 209 F.3d 163 (2d Cir. 2000)..........34

<u>Chance v. Armstrong</u>, 143 F.3d 698 (2d Cir. 1998)...........................20

<u>Chen-Oster v. Goldman, Sachs & Co.</u>, 2019 WL 3294145 (S.D.N.Y. June 7, 2019) ...................................................................................45

<u>Chiavarelli v. Williams</u>, 681 N.Y.S.2d 276 (1st Dep't 1998)...............7, 23

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957)............................................. 20

<u>De La Peña v. Metro. Life Ins. Co.</u>, 953 F. Supp. 2d 393 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014).....................................................44

<u>Dejana Indus. v. Vill. of Manorhaven</u>, 2015 WL 1275474 (E.D.N.Y. Mar. 18, 2015)...............................................................................31

<u>Doe #1 v. Syracuse University</u>, 468 F. Supp. 3d 489 (N.D.N.Y. 2020)...29

<u>Gorokhovsky v. New York City Housing Authority</u>, 552 Fed. Appx. 100 (2d Cir. 2014) .................................................................38, 40

<u>Graham v. Long Island R.R.</u>, 230 F.3d 34 (2d Cir. 2000) .................44, 46

<u>Gross v. New York Times Co.</u>, 82 N.Y.2d 146, 153 (1993)... 27, 28, 29, 30

<u>Harte-Hanks Communications, Inc. v. Connaughton</u>, 491 U.S. 657 (1989).................................................................................35

<u>Hassan v. Dr. Ken. Spicer</u>, 2006 WL 228958 (E.D.N.Y. Jan. 31, 2006).23

Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235 (1991) ....................8, 23

Joye v. PSCH, Inc., 2016 WL 6952252 (S.D.N.Y. Nov. 28, 2016)...........46

Kipper v. NYP Holdings, Co., 12 NY3d 348 (2009)................................36

Leibowitz v. Cornell Univ., 584 F. 3d 487 (2d Cir. 2009) .......................42

Little v. City of New York, 487 F.Supp. 2d 426 (S.D.N.Y. 2007)..........32

Littlejohn v. City of New York, 795 F. 3d 297 (2d Cir. 2015).....37, 41, 42

McGuinness v. Lincoln Hall, 263 F.3d 49 (2d Cir. 2001).......................46

Michel v. NYP Holdings, Inc., 816 F.3d 686 (11th Cir. 2016) ...............34

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d
    Cir. 2013).....................................................................................35, 36

Minto v. Molloy College, 2019 WL 4696287 (E.D.N.Y. Sept. 26, 2019) .37

Nguedi v. Fed. Rsrv. Bank of New York, 2019 WL 1083966 (S.D.N.Y.
    Mar. 7, 2019) ........................................................................................39

Nichols v. Item Publishers, 309 NY 596 (1956)...................................25

Norton v. Sam's Club, 145 F.3d 114 (2d Cir. 1998)................................43

Novick v. Village of Wappingers Falls, 376 F. Supp. 3d 318 (S.D.N.Y.
    2019) ............................................................................................45, 46

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007)..........................................42

Rivera v. Time Warner, Inc., 56 AD3d 298 (1st Dept. 2008).................36

Sims v. Artuz, 230 F.3d 14 (2d Cir. 2000).............................................20

St. Amant v. Thompson, 390 U.S. 727 (1968) ........................................35

Steinhilber v. Alphonse, 68 N.Y.2d 283 (1986) ...............................25, 29

Stratte-McClure v. Morgan Stanley, 776 F.3d 94 (2d Cir. 2015)..........19

Syeed v. Bloomberg, L.P., 2021 WL 4952486 (S.D.N.Y. Oct. 25, 2021)..
    .....................................................................................................39, 40

Taylor v. Seamen's Soc'y for Children, 2013 WL 6633166 (S.D.N.Y. Dec.
    17, 2013) ..............................................................................................45

Vega v. Hempstead Union Free School Dist., 801 F.3d 72 (2d Cir. 2015)
    .............................................................................................................41

Velazco v. Columbus Citizens Found., 778 F.3d 409 (2d Cir. 2015) ......40

Wong v. Yoo, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) .................................43

**Treatises**

Robert D. Sack, Sack on Defamation § 16:2.2 at 16.7-8 (4th ed. 2010)..34

# JURISDICTIONAL STATEMENT

This is an appeal from a Decision and Order, entered September 21, 2022, of the United States District Court for the Southern District of New York (Hon. Ronnie Abrams, D.J.), in a lawsuit brought under § 1981 (in addition to the New York State Human Rights Law, New York City Human Rights Law, and New York State Common Law), granting the Defendants' Motion to Dismiss on all counts. The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367 because at least one the Plaintiff's claims arose under the laws of the United States. The Notice of Appeal was filed on October 21, 2022. APP. 68. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because this is an appeal from a final decision of the District Court.

## QUESTIONS PRESENTED

1.     Whether the District Court erred by excluding Defendants' May 25, 2020 published statement announcing Defendants to be "in the process of investigating the situation" from the context and circumstances in which it analyzed the Defendants' subsequent published statements.

2.     Whether the District Court erred in holding that the Defendants' published statements were unactionable pure opinion, rather than actionable mixed opinion.

3.     Whether the District Court erred in holding that it was implausible that a reasonable reader or listener could understand the Defendants' statements to imply that Defendants possessed facts undisclosed or unknown to the reader or listener.

4.     Whether the District Court erred in holding as a matter of law that a reasonable reader would understand the Defendants' statements to be founded exclusively on widely disseminated facts in the public domain.

5.     Whether the District Court erred in holding that the Plaintiff failed to plausibly plead that the assertions contained in the Defendants' published statements were substantially untrue.

6.     Whether the District Court erred by considering evidence in support of the Defendants' Motion to Dismiss without a sworn statement from a person with personal knowledge or any other evidence as to whether, and if so how, such evidence was utilized by the Defendants in their decision to terminate the Plaintiff and published statements regarding Ms. Cooper.

7.     Whether the District Court erred in holding that the Defendants' public statements did not implicate the Plaintiff's race.

8.     Whether the District Court erred in holding that the Plaintiff's Complaint failed to allege facts plausible to determine that the Plaintiff was similarly situated to her comparators in all material respects.

9.     Whether the District Court erred in holding that the Plaintiff did not allege facts plausible to determine that the Plaintiff's comparators had engaged in comparable conduct to the Plaintiff.

10.     Whether the District Court erred in holding that the Plaintiff failed to plead facts plausible to give rise to a "minimal inference of discriminatory motivation," and dismissing her claims under Section 1981 and the New York State Human Rights Law.

11.     Whether the District Court erred in holding that the Plaintiff failed to plead facts plausible to show she was treated "less well," and dismissing her claims under the reduced New York City Human Rights Law standard.

## <u>STATEMENT OF THE CASE</u>

### A.

### Preliminary Statement and Summary of Argument

The events in Central Park underlying this litigation did not occur because the Plaintiff Amy Cooper ("Plaintiff" or "Ms. Cooper") is a racist -- they occurred because she was alone, cornered, and quite intentionally made to feel frightened for her personal safety. The confrontation occurred not because of race, but because of an ongoing feud between bird watchers and dog owners. It was only the proliferation of false and incomplete information that converted this into a racial flashpoint resulting in the utter destruction of Ms. Cooper's life.

As Ms. Cooper's employer, the Defendants are held by Federal, State, and City law to a different standard than social media and the public-at-large. Defendants may not proliferate false and incomplete information about their employee with impunity. Not only are Defendants held to a higher standard under law, as Ms. Cooper's employer the Defendants are known by the public to be subject to a different standard, and thereby are understood to be speaking from a position of legitimacy and authority.

The Defendants made public pronouncements that: a) Defendants were "in the process of investigating (Ms. Cooper's) situation," b) Defendants conducted an "internal review," c) "the facts were undisputed in (Ms. Cooper's) case," and d) Defendants "feel confident in the due diligence (they) did" with regard to Ms. Cooper. The Defendants announcements conveyed to the public that the result of their work was to determine that Ms. Cooper was a racist, and therefore was terminated from employment with Franklin Templeton.

But the Defendants performed no investigation, they conducted no internal review, they held no undisputed facts, and endeavored no due diligence. They never made any determination that Ms. Cooper was a racist. Their implication that they did these things and therefore obtained information which the public did not have converted their statements to textbook actionable mixed opinion. "Where the author of a derogatory statement of opinion implies that it is based on facts not disclosed to his audience, a claim for defamation may be premised on this implied factual assertion." Chiavarelli v. Williams, 681 N.Y.S.2d 276, 277 (1st Dep't 1998).

Defendants had two options to maintain a pure, nonactionable opinion. Defendants could have told its readers and listeners what evidence their conclusion about Ms. Cooper was based on, or it could have not implied that it obtained or held superior information. But Defendants did neither of these things, opting instead to convey to the world that they had investigated, reviewed, performed due diligence, and held undisputed facts when they knew they did not.

The District Court erred in ruling that the reasonable reader or listener could not as a matter of law understand the Defendants' multiple statements about Ms. Cooper to imply that Defendants held superior facts to the general public. "[T]he court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" Brian v. Richardson, 87 N.Y. 2d 46, 51 (1995) *quoting* Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 254 (1991). Especially at the Motion to Dismiss stage, there simply is no way for the reasonable person to read or hear the Defendants' statements without understanding them to mean that Ms. Cooper's employer performed a thorough investigation,

internal review, and due diligence, and that the result of their diligence was the possession of facts which the public did not have.

Defendants' Motion to Dismiss did not present even a single piece of evidence demonstrating an investigation, internal review, undisputed facts, or due diligence. It was plain error for the District Court to grant the Defendants' Motion to Dismiss without any evidence that any manner of investigation, internal review, or due diligence was ever performed. Without such evidence, their statements that such work was done and implications that this work led to the conclusion that Ms. Cooper was racist and had to be terminated from employment are clear mixed opinion defamation. That the Defendants' Exhibits contained nothing but publicly available documents pulled from an internet search seventeen months after her termination is not merely insufficient to support a Motion to Dismiss, but is dispositive of actual malice and the knowing falsity of their statements.

The Plaintiff's Amended Complaint contains 139 paragraphs of substantive and specific *Factual Background* containing allegations that far exceed the threshold required to overcome a Rule 12(b)(6) motion to dismiss. The Defendants' multiple explicit references to race

and racism in conjunction with their public celebrations of Plaintiff's termination fatally undermine the credibility of their refrain that race played no role in their decision.

Moreover, there remains no legitimate explanation for why Ms. Cooper was treated so disparately from her male comparators, and no explanation for why Defendants relied entirely on social media to determine her discipline when it avowed it would not do so for the personnel decisions of co-workers.

## B.

## Statement of Undisputed Material Facts

The Plaintiff was confronted in Central Park by Christian Cooper (no relation to the Plaintiff) while walking her dog alone on May 25, 2020. This confrontation ultimately became international news as a racial flashpoint, characterized as a privileged white female "Karen" caught on video verbally abusing an African American male with no possible reason other than the color of his skin. APP. 11 (Compl. ¶1).

This characterization was nurtured and exacerbated by the public statements published by the Defendants to millions of people implying that it had performed a legitimate investigation into its employee and

the events of May 25, 2020, that a legitimate investigation determined indisputably that Plaintiff was a racist, and that due to the results of their legitimate investigation, the Plaintiff's employment with the Defendants was terminated. APP. 11-12 (Compl. ¶2). The Defendants' alleged investigation and results provided legitimacy to the "Karen" story, and provided justification for those seeking the destruction of the Plaintiff's life. APP. 12 (Compl. ¶3). The Defendants never performed any investigation into the confrontation between Plaintiff and Mr. Cooper in Central Park on May 25, 2020, and knew they never performed an investigation; if they had, it would have shown that the Plaintiff did not shout at Mr. Cooper or call the police because she was a racist. *See* APP. 12 (Compl. ¶4).

Rather, the Plaintiff did these things because she was alone in the park and frightened to death after being selected as the next target of Mr. Cooper, an overzealous birdwatcher engaged in Central Park's escalating feud between birdwatchers and dog owners. *See* APP. 12 (Compl. ¶5).

Mr. Cooper was a birdwatcher with a history of aggressively confronting dog owners in Central Park who walked their dogs without

a leash. *See* APP. 12 (Compl. ¶6). It was Mr. Cooper's practice and intent to cause dog owners to be fearful for their safety and the safety of their dogs, and he had a history of doing so to people, including to at least one African American man who wrote national media stating: "when I saw that video, I thought, I cannot imagine if he approached [Amy] the same way, how she may have genuinely been afraid for her life." *See* APP. 12, 20-22 (Compl. ¶¶6, 52-64).

But the Defendants nevertheless perpetuated and legitimized the story of "Karen" vs. an innocent African American, with reckless disregard for the falsity of their statements or the destruction of Plaintiff's life in the process. *See* APP. 13 (Compl. ¶7).

On the date of the incident, the Defendants published a statement on Twitter about the Central Park incident stating:

> We take these matters very seriously, and we do not condone racism of any kind. <u>While we are in the process of investigating the situation</u>, the employee involved has been put on administrative leave. (Emphasis added). APP. 13 (Compl. ¶8).

On the following day, the Defendants published a second statement on Twitter, now announcing:

11

> <u>Following our internal review</u> of the incident in
> Central Park yesterday, we have made the
> decision to terminate the employee involved,
> effective immediately. We do not tolerate racism of
> any kind at Franklin Templeton. (Emphasis
> added). APP. 13 (Compl. ¶9).

The May 26, 2020 statement on Twitter was "liked" by over 277,000 people, and seen by countless more. There can be no question that the public to whom Defendants published the May 26, 2020 statement knew and understood that the subject of Defendants' statement, "the employee involved," was Plaintiff, and that this statement was interpreted to mean an investigation was conducted by Defendants and determined the Plaintiff to be a racist. APP. 13-14 (Compl. ¶¶10-14).

The following week on June 2, 2020, the President and CEO of Franklin Templeton, Jenny Johnson, continued by participating in a video interview carried on Bloomberg.com and answered questions exclusively about the Defendants' termination of Plaintiff's employment. APP. 14 (Compl. ¶15). During that interview, Ms. Johnson again implied that the facts of this matter were fully reviewed prior to the Defendants' decision to terminate Plaintiff's employment, and that the Defendants

terminated Plaintiff's employment because "the facts were undisputed in this case." APP. 14-15 (Compl. ¶¶16-20).

Over a year later on July 15, 2021, Ms. Johnson participated in a Yahoo! Finance video interview and answered questions about the Defendants' termination of the Plaintiff's employment. APP. 15 (Compl. ¶26). During that interview, Ms. Johnson contrasted that situation to a second, more recent situation involving a Franklin Templeton employee. APP. 15-16 (Compl. ¶¶27-28). It is believed that the second situation involving a Franklin Templeton employee to which Ms. Johnson referred was Vivek Kudva, a nonwhite Indian male and a senior executive employed by Franklin Templeton. APP. 16 (Compl. ¶¶28-29). Mr. Kudva was given a massive fine and a one-year market ban by the Securities and Exchange Board of India for using non-public information to sell approximately $4,000,000 in Franklin Templeton debt funds which were then closed weeks later. APP. 16 (Compl. ¶30).

During the July 15, 2021 interview, Ms. Johnson again implied that the Defendants possessed information about the Plaintiff which the public did not have: "[w]e felt and we feel confident <u>in the due diligence</u>

<u>we did</u> and the process to make our evaluations, our decision." (emphasis added) APP. 16 (Compl. ¶32).

Ms. Johnson made clear that the company does not believe it is appropriate to rely on social media to make personnel decisions in high-profile cases involving Franklin Templeton employees, and that they did not do so in the case of Mr. Kudva:

> "[t]he world has gotten to the point where social media comes to very quick decisions without all the facts…and I had this conversation with some employees over an issue recently and my comment to those employees was, here's why social media doesn't have the facts right on this particular situation, and here is why we're going to stand by and I am going to stand by our decision. Because you want to work for a company where the firm has your back. That if people don't get the facts right, the company isn't just going to throw you under the bus." APP. 16, 24 (Compl. ¶33; ¶¶75-81).

The Defendants' only communication with Plaintiff about the May 25, 2020 incident in Central Park involving the Plaintiff occurred that same night while they knew the Plaintiff was profoundly distraught and fearful of her physical safety. APP. 17 (Compl. ¶¶36-37). The Defendants performed no investigation into the May 25, 2020 incident in Central Park involving Plaintiff other than read social media -- the precise

opposite of what Ms. Johnson revealed the company's protocol to be in high profile situations, and contrary to their handling of Mr. Kudva's matter. *See* APP. 17, 26-27 (Compl. ¶35, ¶¶96-103). Not only did the Defendants not rely on social media to determine whether or not it would discipline Vivek Kudva, the Defendants have been outspoken about the peril of relying on social media in its public defense of Vivek Kudva. *See* APP. 16-17 (Compl. ¶¶33-34).

In another high-profile matter, the Defendants allowed Chuck Johnson to join the Franklin Resources' board of directors in 2013, a position he held until February 2020, despite reports that he was a convicted of "slamm(ing) his wife into a kitchen stove hard enough to break the bones of her face." APP. 27-28 (Compl. ¶¶104-108). Another male employee, C.K.,[1] has been employed by the Defendants since at least 2007, despite multiple instances and complaints of sexual harassment and corporate wrongdoing. APP. 28-29 (Compl. ¶¶109-118). When the Plaintiff complained about C.K., nothing was done, and she was told to "keep it quiet." APP. 29 (Compl. ¶119).

---

[1] "C.K." was identified as such in the Complaint as a courtesy to protect his identity because his name, unlike the other two comparators, was not previously in the news. A letter was sent to Defendants' counsel by Plaintiff's counsel explaining this, and providing C.K.'s full name, on September 27, 2021.

Beginning May 25, 2020, the Plaintiff's life was destroyed as she was inundated with some of the most vile race and gender-based text messages, emails, and telephone calls imaginable. APP. 30-31 (Compl. ¶¶129-138). A representative text message sent to the Plaintiff's personal cell phone said: "You racist cunt bitch. Fuck that dog too, stupid bitch. You all over social media lying on a black man. Stupid typical white bitch." APP. 31 (Compl. ¶137). The Plaintiff received dozens of other text messages, emails, and telephone messages like this one. APP. 31 (Compl. ¶138). The Plaintiff was so distraught that she contemplated suicide. APP. 31 (Compl. ¶139).

## C.

## Proceedings Below

The Amended Complaint was filed on September 22, 2021, in the United States District Court for the Southern District of New York. APP. 11-47. In Count One, the Plaintiff asserts a claim for race discrimination in violation of § 1981. APP. 33. In Count Two, the Plaintiff asserts a claim for race and gender discrimination under the New York State Human Rights Law. APP. 33-34. In Count Three, the

Plaintiff asserts a claim for race and gender discrimination under the New York City Human Rights Law. APP. 34-35. In Count Four, the Plaintiff asserts a claim for defamation under New York State common law. APP. 35-37. In Count Five, the Plaintiff asserts a claim for defamation *per se* under New York State common law. APP. 37-38. The Plaintiff purposefully did not oppose the Defendants' Motion to Dismiss with regard to Counts Six and Seven[2]; these Counts were properly dismissed by the District Court.

The Defendants filed a Rule 12(b)(6) Motion to Dismiss in lieu of an Answer on October 6, 2021. No discovery took place prior to the Motion to Dismiss pursuant to the Court Order filed on August 20, 2021 adjourning "all discovery and scheduling obligations…until after the Court's decision on Defendants' Motion to Dismiss."

Oral argument on the Motion to Dismiss was held in-person on September 14, 2022. APP. 8 (Docket Entry 40). The District Court issued its decision on September 21, 2022, granting the Defendants' motion and

---

[2] As stated explicitly in the Plaintiff's memorandum of law opposition to the Defendants' Motion to Dismiss, the sections addressing Defendants' argument on Counts Six and Seven were "unopposed and intentionally left blank by the Plaintiff."

dismissing the Plaintiff's Complaint in its entirety. APP. 51-67. Plaintiff filed her Notice of Appeal on October 21, 2022. APP. 68.

## <u>STANDARD OF REVIEW</u>

The Court of Appeals "review(s) *de novo* the district court's judgment granting Defendants' motion to dismiss." <u>Stratte-McClure v. Morgan Stanley</u>, 776 F.3d 94, 99-100 (2d Cir. 2015) *citing* <u>Absolute Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60, 65 (2d Cir. 2012). The operative standard at the motion to dismiss stage is, accepting the Plaintiff's allegations as true, plausibility of the Plaintiff's claim for relief. *See* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.")

"Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted is not warranted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000) *quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). "When a federal court review the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its

task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Sims</u> at 20. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." <u>Ibid</u>. *quoting* <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998).

## LEGAL ARGUMENT

### A.

### The Defendants' Statements are Textbook Actionable Mixed Opinion Because They Imply a Basis in Undisclosed Facts to the Reasonable Reader

The Defendants committed actionable defamation against Ms. Cooper by implying they determined her to be a racist based upon an investigation which revealed facts undisclosed to its audience, even though Defendants knew no such investigation ever took place and that they possessed no such facts.

It is true that without more, calling someone a "racist" is typically nonactionable opinion. But Ms. Cooper's claim is so much more than that she was called a racist by the Defendants when she was not. Ms. Cooper's claim is that the Defendants conveyed to the public that they *determined* she was a racist based on an investigation and review which they never actually performed, and that they held superior facts which they never actually had. It is not just the Defendants' conclusion -- it is their

implication that the conclusion was grounded in undisclosed and superior knowledge that makes their statements actionable as mixed opinion.

The key inquiry is the reasonable reader's understanding of the Defendants' statements, as read or heard within the statements' complete context. "[T]he court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" <u>Brian v. Richardson</u>, 87 N.Y. 2d 46, 51 (1995) *quoting* <u>Immuno AG v. Moor-Jankowski</u>, 77 N.Y.2d 235, 254 (1991).

To keep its statements "pure opinion," "the statement must either include a 'recitation of the facts upon which it is based,' or at least 'not imply that it is based upon undisclosed facts.'" <u>Hassan v. Dr. Kenneth Spicer</u>, 2006 WL 228958, at *5 (E.D.N.Y. Jan. 31, 2006). The Court continued: "otherwise, the statement will be deemed a 'mixed opinion,' which is actionable based on 'the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." <u>Ibid</u>.

"Where the author of a derogatory statement of opinion implies that it is based on facts not disclosed to his audience, a claim for defamation may be premised on this implied factual assertion." <u>Chiavarelli v. Williams</u>, 681 N.Y.S.2d 276, 277 (1st Dep't 1998). At the Motion to Dismiss stage, "[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action." <u>Silsdorf v. Levine</u>, 59 N.Y. 2d 8, 12 (1983); *see also* <u>Smith v. Long Island Youth Guidance, Inc.</u>, 181 A.D.2d 820, 821 (2d Dept.1992)("Whether the text quoted above is likely to be understood by the ordinary reader as defamatory…in light of all the other circumstances of the case, is a question of fact for the jury.")

Three factors guide the Court's analysis: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion." <u>Cummings v. City of New York</u>, 2020 WL 882335, at *20 (S.D.N.Y. Feb. 24, 2020). "It is the last of these

22

factors that lends both depth and difficulty to the analysis." <u>Brian</u> at 51. "[T]he identity, role and reputation of the author may be factors to the extent that they provide the reader with clues as to the article's import." <u>Id</u>. at 52.

In <u>Afftrex, Ltd. V. General Electric Co.</u>, 161 A.D.2d 855 (3d Dep't 1990), for example, the Court applied this principle to find an actionable claim for defamation where defendant called plaintiff "an evil man" and therefore "was fired from his job." <u>Id</u>. at 905. The Court explained that what would otherwise have been protected speech as pure opinion was converted to actionable mixed opinion because "an opinion which implies a justifiable basis in facts unknown to the listener may formulate grounds for a defamation cause of action." <u>Id</u>. at 855-56. The Court further explained: "'[t]he actionable element of a 'mixed opinion' is not the false opinion itself -- it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.'" <u>Id</u>. 856 *quoting* <u>Steinhilber v. Alphonse</u>, 68 NY2d 283, 290 (1986). Accordingly, the Court held that the Defendants' statement that Plaintiff "'is also an evil man' and therefore 'was fired from his job' sufficiently implies that

his discharge from employment was for misconduct such as to be susceptible to a defamatory interpretation." Afftrex, Ltd. at 856 *citing* Nichols v. Item Publishers, 309 NY 596 (1956). Stated another way, "the inextricable nexus in (Defendants') statement between (Plaintiff's) evilness and the loss of his job logically leads the listener to the conclusion that (Plaintiff) was fired because he was evil; his evilness in some way affecting his performance at (his job.)" Afftrex, Ltd. at 856.

In Brian, the Court declined to find actionable mixed opinion in only after finding numerous factors in favor of the Defendant. Brian v. Richardson, 87 N.Y. 2d 46 (1995). Among the factors considered by the Court in Brian was that the statement's author "disclosed that he had been (an adverse party's) attorney, thereby signaling that he was not a disinterested observer." Id. at 53. Another was that the article was published in the *Opinions* section of the newspaper, further signaling to the reader that this was an expression of opinion. Yet another was that "the predominant tone of the article, which was rife with rumor, speculation and seemingly tenuous inferences, furnished clues to the reasonable reader that (the article) was something less than serious, objective reportage." Ibid. Finally, the author of the challenged work "set

out the basis for (his) personal opinion, leaving it to the readers to evaluate it for themselves." Id. at 53-54. "Thus, there was no suggestion in the article that there were additional undisclosed facts on which its credibility assessment had been based." It was only after consideration of these factors leading to the determination that the reasonable reader would not have believed that the defendant was conveying facts, that the Court dismiss the plaintiff's defamation claim.

The Court of Appeals summarized:

> In sum, both the immediate context of the article itself and the broader context in which the article was published made it sufficiently apparent to the reasonable reader that its contents represented the opinion of the author and that its specific charges about plaintiff were allegations and not demonstrable fact. Id. at 54.

The Court's Opinion in Brian relied heavily on its contrast of the facts in Gross v. New York Times Co., 82 N.Y.2d 146, 153 (1993). Brian at 52. In Gross, the Court of Appeals reversed the Appellate Division's order dismissing the plaintiff's defamation causes of action based on a series of factors, including "what purported to be a thorough investigation." Gross at 156.

Conveyance by a defendant to the reader that an investigation was performed and produced facts unknown to the public is a dispositive distinction between actionable mixed opinion and protected pure opinion. Once the defendant has implied that an investigation was performed, it converts an otherwise nonactionable opinion into an actionable defamation claim because it "'encourage(s) the reasonable reader to be less skeptical and more willing to conclude that they stated or implied facts." Gross at 156 *quoting* 600 W. 115th St. Corp. v. Von Gutfeld, 80 NY2d 130, 142 (1992).

"The dispositive inquiry, under either Federal or New York law, is 'whether a reasonable reader could have concluded that (the statement was) conveying facts about the plaintiff.'" Gross at 152 *quoting* 600 W. 115th St. Corp. at 139.

There is a critical distinction under New York law between statements of opinion which imply a basis in undisclosed facts, and statements of opinion which either recite the facts upon which that opinion was formed or do not imply the existence of such undisclosed underlying facts at all. *See* Gross at 153 ("[I]n determining whether a particular communication is actionable, we continue to recognize and

utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts.") (internal citations omitted). Statements of opinion which imply a basis in undisclosed facts are actionable; only the latter category is not.

The reason for this distinction is "because a reasonable listener or reader would infer that 'the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed.'" Gross at 153 *quoting* Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986). A full disclosure of the facts on which an opinion is based, on the other hand, lets the reader know that it is reading the author's opinion or conjecture. *See* Gross at 154 ("In contrast, the latter are not objectionable because…a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.")

"'When, however the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or

27

hearing it, it is a 'mixed opinion' and is actionable.'" <u>Doe #1 v. Syracuse University</u>, 468 F. Supp. 3d 489 (N.D.N.Y. 2020) *quoting* <u>Steinhilber</u> at 289.

The test is not the word or words themselves, but whether a reasonable reader would interpret those words to be an assertion of provable fact. "[T]he courts are obliged to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact." <u>Gross</u> at 155.

The instant matter is a textbook actionable "mixed opinion" case. The Defendants could have refrained from implying it had additional facts, or could have disclosed what investigation in actually performed or the facts it actually had, but they did neither of those things. Defendants boasted to the world that Ms. Cooper was terminated after "investigation," "internal review," review of "undisputed facts" and "due diligence" determined her to be a racist, but Defendants did none of these things -- there was no investigation, internal review, review of any facts or due diligence by the Defendants. Especially when the speaker is an entity with the imprimatur of Franklin Templeton, the Defendants'

statements implied superior knowledge and are classic mixed opinion subject to liability for defamation.

Moreover, the Plaintiff's allegations that Defendants performed no investigation, no internal review, did not hold undisputed facts, and performed no due diligence was undisputed by the Defendants. Defendants entered no admissible evidence in support of its Motion to Dismiss to show it had done any of these things.

The only "evidence" upon which the Defendants relied was a Declaration in Support by counsel that an internet search performed by counsel on October 6, 2021 during preparation of its motion turned up a series of articles and other media. The results of counsel's Google search performed almost a year and a half after the alleged "investigation," "internal review," "undisputed facts," and "due diligence" of the Defendants is wholly meaningless, and should not have been permitted to support its Motion to Dismiss. That counsel found items on the internet which it believes support the propriety of Defendants' mixed opinion statements are irrelevant and immaterial without any evidence about whether or how those items were *actually used* by Defendants. *See* Dejana Indus. v. Vill. of Manorhaven, 2015 WL 1275474, *6 (E.D.N.Y.

Mar. 18, 2015)("Federal Rule of Civil Procedure 56(d) states that 'an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'") *quoting* Fed. R. Civ. P. 56 (c)(4); *see also* <u>Little v. City of New York</u>, 487 F.Supp. 2d 426, 438 (S.D.N.Y. 2007)("[A]n attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment.") While counsel may have personal knowledge of the results of its own Google search performed on 10/6/21, such a search should not have been admissible evidence on the issue of the Defendants' investigation back in May 2020 when Ms. Cooper was terminated and defamed through publication of Defendants' mixed opinion.

## B.

### Even if *Arguendo* Subject to the Heightened Standard, Defendants' Statements Constitute Actual Malice

The defamation alleged in this litigation was not lawful conduct; it was the declaration of an employee's unlawful termination in violation of the NYCHRL, NYSHRL, and § 1981. The Defendants have no right or

legitimate First Amendment interest in broadcasting and attempting to benefit from its own unlawful conduct.

The Plaintiff has never alleged that the Defendants could or should not have spoken out against racial injustice, or that these statements were defamatory. But the presence of these non-defamatory statements in the same communications as the statements defaming Plaintiff should not cloak the defamatory statements with protection as "lawful conduct."

It would be a perverse use of § 76-a to invoke a heightened standard for the proclamation of an unlawful act by a commercial entity as "lawful conduct."

Even if held to the higher standard, the Plaintiff's allegations far surpass the threshold for actual malice. Actual malice here only requires the Plaintiff to demonstrate that Defendant published statements that they had conducted an investigation, performed an internal review, uncovered undisputed facts, and performed its due diligence to determine she was racist, when they knew they had not conducted any such analysis and held no such facts.

The same <u>Iqbal</u> and <u>Twombly</u> standard of plausibility which governs the discrimination sections of this brief apply to defamation. *See*

Brimelow v. New York Times Co., 2021 WL 4901969, at *4 (2d Cir. Oct. 21, 2021)(joining "every circuit that has considered the matter…" to "hold that the plausibility pleading standard applies to the actual malice standard in defamation proceedings"). To survive a 12(b)(6) motion to dismiss, a plaintiff "'must plead plausible grounds to infer actual malice by alleging enough fact(s) to raise a reasonable expectation that discovery will reveal evidence of actual malice.'" Brimelow v. New York Times Co., 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) *quoting* Biro v. Conde Nast, 807 F.3d 541, 546 (2d Cir. 2015). A successful plaintiff may plead actual malice generally. Brimelow at *3-4 ("'Actual malice is not a matter that requires particularity in pleading -- like other states of mind, it may be alleged generally...'") *quoting* Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016).

Actual malice is a significant hurdle, but is "by no means insurmountable." Biro at 545 ("The hurdles to plausibly pleading actual malice, though significant given the First Amendment interests at stake, are by no means insurmountable.") *citing* Robert D. Sack, Sack on Defamation § 16:2.2 at 16.7-8 (4th ed. 2010). "In practice, requiring that actual malice be plausibly alleged has not doomed defamation cases

against public figures. To the contrary, district courts in and out of our Circuit have inferred actual malice at the pleading stage from allegations that referred to the nature and circumstances of the alleged defamation or previous dealings with the defendant." Biro at 545-546.

Though actual malice is subjective, the Court will typically infer actual malice from objective facts pled in the Complaint because "a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." Biro at 545 *citing* Celle v. Filipino Reporter Entertainers, Inc., 209 F.3d 163, 183 (2d Cir. 2000). The Second Circuit explained:

> And of course whether actual malice can plausibly be inferred will depend on the facts and circumstances of each case. For example, a plaintiff may allege that "a story [was] fabricated by the defendant" if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information. Biro at 545 *citing* St. Amant v. Thompson, 390 U.S. 727, 732 (1968).

Instances where actual malice has been found to be lacking include Complaints that merely allege failure to properly investigate claims contained in a published statement, failure to utilize sufficient fact-checkers, or facts suggesting that a defendant "had reason to question

the accuracy of the information at issue." *See* <u>Harte-Hanks</u> <u>Communications, Inc. v. Connaughton</u>, 491 U.S. 657 (1989)(well settled that "failure to investigate will not alone support a finding of actual malice"); <u>Kipper v. NYP Holdings, Co.</u>, 12 NY3d 348, 355 (2009)("failure to employ fact-checkers, to attempt to verify the status of his license prior to publication, or to identify those individuals responsible for the false headline and statement" insufficient); <u>Rivera v. Time Warner, Inc.</u>, 56 AD3d 298, 298 (1st Dept. 2008)("actual malice cannot be inferred from factual allegations merely suggesting that [defendant] had reason to question the accuracy of the information at issue.")

In the instant matter, the Plaintiff alleges that the Defendants published statements that they had performed an investigation, conducted an internal review, held undisputed facts, and performed its due diligence when they knew no such analysis had been performed. This was not a failure of research or diligence, this was a blatant and knowing deception.

## C.

### The Plaintiff's Allegations of Employment Discrimination far Exceed the Plausibility Threshold Required to Survive a Rule 12(b)(6) Motion

The quantity, substance, and specificity of the allegations contained in the Plaintiff's 139 paragraphs of *Factual Background* in the Amended Complaint far exceed those required to overcome Rule 12(b)(6) dismissal. The Defendants' claims of implausibility are really disputes of fact properly decided by a jury after the conclusion of discovery.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct charged." Ashcroft v. Iqubal, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the factual content alleged by the Complaint to reach the facial plausibility threshold must be accepted as true, and is entitled to all reasonable inferences. *See* ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Stated another way, it is the plaintiff's obligation to merely "nudge[] its claims across the line from conceivable to plausible…" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). At this stage, a plaintiff need only show "plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F. 3d 297, 311 (2d Cir. 2015). The complaint is not required to contain "detailed factual allegations" to overcome a motion made under Rule 12(b)(6). Minto v.

Molloy College, 2019 WL 4696287, at *5 (E.D.N.Y. Sept. 26, 2019) *quoting*

Iqubal at 678 ("A complaint need not contain detailed factual allegations,

but must contain more than mere 'labels and conclusions' or a 'formulaic

recitation of the elements of a cause of action' or 'naked assertions' devoid

of 'further factual enhancement.'")


<u>The New York City Human Rights Law Standard</u>

The NYCHRL was amended with the explicit objective of being

interpreted more liberally than its state and federal counterparts:

> To bring about this change in the law, the Act established two new rules of construction. First, it created a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only "'as a *floor* below which the City's Human Rights law cannot fall.'"

> Second, it amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013)(internal citations omitted).

Claims brought under the NYCHRL are analyzed separately, and under a liberal standard. *See* Gorokhovsky v. New York City Housing Authority, 552 Fed. Appx. 100, 101 (2d Cir. 2014)("claims under the NYCHRL are to be evaluated separately from federal and state law claims and given liberal, independent construction.") *citing* Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL must be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" Syeed v. Bloomberg, L.P., 2021 WL 4952486, *39 (S.D.N.Y. Oct. 25, 2021) *quoting* Nguedi v. Fed. Rsrv. Bank of New York, 2019 WL 1083966, at *10 (S.D.N.Y. Mar. 7, 2019).

Under the NYCHRL, the Plaintiff must show only that she was treated "less well" than others outside her protected characteristic, and that discrimination was among her employer's motivating factors for unequal treatment. *See* Syeed at *40 ("'[Plaintiff] must show that she has been treated less well at least in part 'because of her protected characteristic].'" Under the NYCHRL, the plaintiff must allege 'that 'unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for "her unequal treatment."")(internal

citations omitted). "'It is not uncommon for covered entities to have multiple or mixed motives for their action, and the NYCHRL proscribes such 'partial' discrimination.'" Syeed at *40 *quoting* Velazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015).

Even once a case has reached the summary judgment stage, the NYCHRL has a relaxed standard for pretext. "[S]ome evidence that at least one of the reasons proffered by [the] defendant is false, misleading or incomplete ... should in almost every case indicate to the court that a motion for summary judgment should be denied." Bennett v. Health Mgmt. Inc., 92 A.D.3d 29, 45 (N.Y. App. Div. lst Dept 2011). The standard is of course even more liberal at the motion to dismiss stage. *See* Gorokhovsky at 102 ("At the pleadings stage and under such a liberal construction, we conclude that [plaintiff] has stated plausible claims under the NYCHRL for discrimination on the basis of national origin and age.")

In the instant matter, there can be no question but that the Plaintiff was treated less well than her male counterparts who received no discipline after allegations and/or convictions for sexual harassment, domestic battery, corporate misconduct, and fraud. The Plaintiff's

outcome was not the only "less well" treatment she received; the Defendants broke with their own protocol, faithfully adhered to in the matter involving Vivek Kudva, a nonwhite male, and terminated the Plaintiff without any investigation other than a rapid perusal of social media. The reasons provided for the disparity of treatment between the Plaintiff and her three male, and in the case of Mr. Kudva, non-white, counterparts remain, at the very least, incomplete.

### Inference of the Essential Elements of a *Prima Facie* Case

Courts apply the McDonell Douglas framework to §1981 and New York State Human Rights Law claims. *See* Molloy College at \*20 *citing* Littlejohn at 312; Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d. Cir. 2000). A *prima facie* showing is not required at the motion to dismiss stage; only "plausible support to a minimal inference of discriminatory motivation." Molloy College at \*22-23 *citing* Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 84 (2d Cir. 2015) *additional internal citations omitted*. At the motion to dismiss stage, "plaintiffs must simply allege facts that allow the court, in substance, to *infer* the essential elements of a *prima facie case.*" Molloy College at \*23 *citing* Barrett v.

Forest Labs., Inc., 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014) (emphasis in original).

While discriminatory remarks or invidious comments about the plaintiff's race or gender is one way to achieve the required minimal inference, so is more favorable treatment of an employee outside the protected class, or the sequence of events leading to termination. *See* Littlejohn at 312 *quoting* Leibowitz v. Cornell Univ., 584 F. 3d 487, 502 (2d Cir. 2009)("'An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'")

Discriminatory intent can be inferred through facts alleging that persons outside of the plaintiff's protected class "'were given preferential treatment.'" Molloy College at *23 *quoting* Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). Inference of discriminatory intent is gathered by the Court through an "expansive approach" which "'must rely on the cumulative weight of circumstantial evidence.'" Molloy College at *23

*quoting* <u>Wong v. Yoo</u>, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009) *quoting*

<u>Norton v. Sam's Club</u>, 145 F.3d 114, 119 (2d Cir. 1998).

It is not uncommon for a Plaintiff in an employment discrimination claim to be without a "smoking gun." <u>Ibid</u>. Moreover, the Court must not abandon its common sense when analyzing the complaint. <u>AJ Energy LLC v. Woori Bank</u>, 829 Fed. Appx. 533, 534 (2d Cir. 2020)("A district court, however, need not credit conclusory allegations, nor suspend common sense when analyzing the complaint.")(internal citations omitted).

Independent and in addition to the disparate treatment between the Plaintiff and her nonwhite and male counterparts, the Defendants' own words and actions provide the required plausible support for a minimal inference of discriminatory motivation. It was the Defendants who implicated the race of their employee with each of its communications to the public, by repeatedly connecting its stated stance against racism with their termination of the Plaintiff.

That the Plaintiff would not have been terminated without an investigation but-for her race is plain, because the Defendants simply could not have touted the termination of a nonwhite employee the way

they did with Ms. Cooper. The Defendants' widespread and multiple advertisements of their termination of Ms. Cooper, all published in conjunction with their purported stance on racism, implicates race sufficiently to overcome a 12(b)(6) motion to dismiss.

Comparator Evidence

One way a plaintiff may raise an inference of discriminatory intent is by showing that she was treated less favorably than similarly situated employees outside of her protected group. *See* Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Issues regarding the appropriateness of a comparator are typically addressed at the summary judgment stage, only after the parties have had an opportunity to conduct discovery. *See* Molloy College at *23 *citing* De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)("Though '[i]ssues regarding appropriate comparators are often addressed in the context of a summary judgment motion following discovery,' courts have granted motions to dismiss where the complaint failed to proffer sufficient facts regarding

comparators to support the contention the comparators were similarly situated to the plaintiffs.")

A comparator need only be similarly situated to a plaintiff in *material respects*. Irrespective of job titles or responsibilities, a plaintiff is properly compared to another employee when those differences are inconsequential to a plaintiff's claims. *See* Chen-Oster v. Goldman, Sachs & Co., 2019 WL 3294145, at *7-8 (S.D.N.Y. June 7, 2019) ("[T]he standard for comparators is rather stringent: though a comparator and plaintiff need not be identical, a comparator must be 'similarly situated to the plaintiff in all material respects.")

What constitutes "all material respects" is case and fact-specific. *See* Novick v. Village of Wappingers Falls, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) *quoting* Taylor v. Seamen's Soc'y for Children, 2013 WL 6633166, at *14 (S.D.N.Y. Dec. 17, 2013)("'What constitutes 'all material respects' varies, of course, from case to case…") The determinative factor is that the plaintiff and her comparator are "subject to the same workplace standards." Ibid.

"A comparator is similarly situated when there is an 'objectively identifiable basis for comparability,' meaning that the comparator and

the plaintiff were subject to the same workplace standards and engaged in misconduct of 'comparable seriousness,' but received different punishments." <u>Joye v. PSCH, Inc.</u>, 2016 WL 6952252, *18 (S.D.N.Y. Nov. 28, 2016) *quoting* <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000).

A plaintiff demonstrates that she is similarly situated "in all material respects" upon a showing "'that similarly situated employees who went undisciplined engaged in comparable conduct.'" <u>Novick</u> at 343 *quoting* <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000).

"[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001).

While the three comparators here did not hold identical positions to the Plaintiff, that is not what is required. The comparators need only be similar in *material* respects -- in this instance, the only material respect is that they were subject to the same workplace standards for the alleged

conduct at issue. This is not a case where the Plaintiff claims she was entitled to a higher salary or swifter promotion, where comparisons between different levels of employees would be significant. The nuance which might implicate differences between the Plaintiff and her three co-workers is absent here; the Plaintiff is challenging a company-wide double standard between males who receive no scrutiny or discipline for alleged wrongdoing, and a female who instantly received the ultimate punishment.

The Defendant Jenny Johnson herself compared the Plaintiff and Vivek Kudva, because she found their similarities to be particularly apt. As with the Plaintiff, the alleged wrongdoing of Mr. Kudva and Chuck Johnson were public and high-profile. But unlike the Plaintiff, the Defendants ignored these high-profile alleged wrongdoings, explaining that "[t]he world has gotten to the point where social media comes to very quick decisions without all the facts." The application of the principle to the male employees of the Defendants but not to the Plaintiff makes them plausible comparators in all *material* respects.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff-appellant requests that this Court issue an order (i) reversing the District Court's Decision and Order entered on September 21, 2022 which granted Defendants' Motion to Dismiss, and (ii) remanding to the District Court for further proceedings consistent with this Court's order of reversal.

Dated: December 19, 2022

Law Office of Andrea Paparella, PLLC -and-
Litt Law, LLC

*Attorneys for Plaintiff*

Respectfully submitted,

By: _____
     Andrea Paparella
     Law Office of Andrea Paparella, PLLC

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d) because this brief has been prepared using Microsoft Word with Century Schoolbook 14-point font (12-point font for footnotes) and contains no more than 8,595 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Dated: December 19, 2022

Law Office of Andrea Paparella, PLLC -and-
Litt Law, LLC

*Attorneys for Plaintiff*

Respectfully submitted,

By: _____
Andrea Paparella
Law Office of Andrea Paparella, PLLC