22-2763-cv
Cooper v. Franklin Templeton Investments

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of June, two thousand twenty-three.

PRESENT:
    ROSEMARY S. POOLER,
    BARRINGTON D. PARKER,
    ALISON J. NATHAN,
        *Circuit Judges.*

_____

Amy Cooper,

    *Plaintiff-Appellant*,

v.                                                                        22-2763-cv

Franklin Templeton Investments, Franklin Resources, Inc., Jenny Johnson, Franklin Templeton Companies, LLC, Franklin Templeton,

    *Defendants-Appellees*,

Franklin Templeton Corps. XYZ 110, John Does, Jane Does 1–10,

    *Defendants*.

_____

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | ANDREA PAPARELLA, Law Office of Andrea Paparella, PLLC, Salem, MA (Matthew Roye Litt, Litt Law, PC, Bordentown, NJ, *on the brief*) |
| FOR DEFENDANTS-APPELLEES: | BRYAN KILLIAN (Grace E. Speights, *on the brief*) Morgan, Lewis & Bockius LLP, Washington, DC. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Abrams, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Amy Cooper appeals from the dismissal of her claims against Defendant-Appellees, several corporate entities under the Franklin Templeton umbrella, and Jenny Johnson, their president and CEO.[1] Plaintiff, a former Franklin Templeton employee, brought claims of employment discrimination and defamation arising from her termination. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we refer to only as necessary to explain our decision to affirm.

## BACKGROUND[2]

On May 25, 2020, Plaintiff, a white woman, encountered Christian Cooper (no relation), a black man in Central Park, while she was walking her dog and he was birdwatching. Plaintiff

---

[1] Defendants represent that Franklin Templeton and Franklin Templeton Investments, although named as defendants, are in fact brand names and not legal entities capable of being sued.

[2] The facts are drawn from the complaint as well as documents integral to the complaint or incorporated by reference. *See Matson v. Bd. of Educ.*, 631 F.3d 57, 61–62 (2d Cir. 2011).

2

alleges that Mr. Cooper confronted her, and his "intentionally aggressive actions" caused her to "fear for her safety and the safety of her dog." App'x at 22 ¶ 66. She alleges this fear caused her to warn Mr. Cooper that she would tell the police there was "an African-American man threatening [her] life," and then to place a 911 call to that effect. *Id.* at 52. The confrontation, which was recorded on a video that went viral, "became international news as a racial flashpoint." *Id.* at 11 ¶ 1. Plaintiff alleges that she was "characterized as a privileged white female 'Karen' caught on video verbally abusing an African American male with no possible reason other than the color of his skin." *Id.*

Later that same day, Franklin Templeton published the following statement on Twitter regarding the incident: "We take these matters very seriously, and we do not condone racism of any kind. While we are in the process of investigating the situation, the employee involved has been put on administrative leave." *Id.* at 13 ¶ 8. Plaintiff alleges that while Franklin Templeton did contact her that day, it did not seek to interview Mr. Cooper about the incident, did not obtain a recording of Plaintiff's 911 call from the police, and did not take various other potential investigative steps. The following afternoon, Franklin Templeton put out another statement on Twitter (the May 26 Statement): "Following our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton." *Id.* at 52. As relevant here, Johnson, Franklin Templeton's president and CEO, made two further public statements about the incident. In a June 2, 2020 interview with *Bloomberg*, in response to questions about Plaintiff's termination, Johnson stated:

3

> I just have to commend [ ] our crisis management team, it was a holiday. Everybody got together. We needed to spend time getting the facts. Sometimes videos can get manipulated and so you have to make sure that you've reviewed all the facts. I think the facts were undisputed in this case, and we were able to make a quick decision.

*Id.* at 53 (the June 2 Statement). And in a July 6, 2020 interview with *Fortune*, Johnson stated: "[Defendants] espouse zero tolerance for racism." *Id.* at 15 ¶¶ 21–22 (the July 6 Statement).

On May 25, 2021, Plaintiff filed suit in the U.S. District Court for the Southern District of New York, alleging that her termination constituted unlawful employment discrimination based on race and sex in violation of federal and state law and that Defendants' May 26, June 2, and July 6 Statements constituted defamation under New York common law.[3] After Plaintiff amended her complaint, Defendants moved to dismiss Plaintiff's suit for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On September 21, 2022, after conducting oral argument, the district court granted Defendant's motion and dismissed the complaint in its entirety.

## DISCUSSION

"We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 67 (2d Cir. 2023). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

Plaintiff appeals from the district court's dismissal of her claims of race discrimination in violation of § 1981 of the Civil Rights Act of 1866, race and gender discrimination in violation

---

[3] Plaintiff initially also pleaded claims of intentional infliction of emotion distress and negligence but has explicitly abandoned them.

4

of the New York State Human Rights Law (NYSHRL) and New York City Human Rights Law (NYCHRL), and defamation and defamation *per se* under New York common law. We affirm for substantially the reasons stated in the district court's well-reasoned opinion.

## I. Employment Discrimination

Section 1981 "outlaws discrimination" on the basis of race "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023) (citation omitted); *see* 42 U.S.C. § 1981(a). "Similarly, the NYSHRL makes it unlawful for an employer to discriminate" on the basis of race or sex, *Williams*, 61 F.4th at 70; *see* N.Y. Exec. Law § 296, as does the NYCHRL, *see* N.Y.C. Admin. Code § 8-107(1). We analyze Plaintiff's federal discrimination claim under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Under this framework, "at the pleadings stage of an employment discrimination case, a plaintiff has a *minimal* burden of alleging facts suggesting an inference of discriminatory motivation," meaning that "the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal quotation marks omitted). Claims under the NYCHRL are analyzed "separately and independently from any federal and state law claims," and we construe "the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)). That said, "the NYCHRL is not a general civility

5

code," and the "plaintiff still bears the burden of showing that the conduct" complained of "is caused by a discriminatory motive." *Id.* at 110 (internal quotation marks omitted).

We have traditionally analyzed employment discrimination claims under § 1981 together with those brought under the NYSHRL, *see Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012), and both the district court and the parties in this appeal treated the federal-law and NYSHRL discrimination claims here as coextensive. But the NYSHRL was amended in 2019 to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. "While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL," some courts in this Circuit "have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL." *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023) (cleaned up). We need not resolve the impact of these amendments here, however, because we conclude that Plaintiff's employment discrimination claims fall short even under the NYCHRL's more liberal standards.

We agree with the district court that Plaintiff fails to allege facts giving rise to even a minimal inference of discriminatory motivation with respect to her termination. To the extent that Plaintiff contends that Defendants "implicated the race of their employee with each of [their] communications to the public, by repeatedly connecting [their] stated stance against racism with their termination of the Plaintiff," Appellant's Br. 41, that argument fails as a matter of law. Defendants' statements made no mention of Plaintiff's race, and even to the extent they could be

6

read as accusing Plaintiff of being a racist, "a statement that someone is a 'racist,' while potentially indicating unfair dislike, does not indicate that the object of the statement is being rejected *because of h[er] race*. 'Racism' is not a race, and discrimination on the basis of alleged racism is not the same as discrimination on the basis of race." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (citation omitted).

Plaintiff's effort to raise an inference of discrimination based on Defendants' treatment of other individuals is equally unavailing. "A plaintiff may raise such an inference by showing that the employer subjected h[er] to disparate treatment, that is, treated h[er] less favorably than a similarly situated employee outside h[er] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493–94 (internal quotation marks omitted). "In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Id.* at 494 (internal quotation marks omitted). On *de novo* review, we agree with the district court that we cannot plausibly infer from Plaintiff's allegations that Plaintiff's alleged comparators meet these standards. As the district court held, the three proffered comparators each "occupied roles that were vastly different on their face" and allegedly engaged in misconduct that "is simply too different in kind to be comparable to [Plaintiff's] conduct in this case." App'x 58–59; *see Littlejohn*, 795 F.3d at 312 (explaining, on motion to dismiss, "to the extent [the plaintiff] attempts to rely on adverse employment actions taken against other employees who worked for different agencies and who had different jobs, the district court correctly concluded that adverse actions

7

taken against employees who are not similarly situated cannot establish an inference of discrimination" (citation omitted)).

Accordingly, we affirm the dismissal of Plaintiff's employment discrimination claims.

## II. Defamation

Plaintiff alleges that Defendants defamed her based on the May 26, June 2, and July 6 Statements. "Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). "Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (cleaned up). In making this determination, "courts must give the disputed language a fair reading in the context of the *publication as a whole*. Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing." *Id.* (cleaned up). And because falsity is an element, in order to survive a motion to dismiss, the complaint "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

A court must also decide as a matter of law whether the challenged statement is opinion because, "[u]nlike the Federal Constitution, the New York Constitution provides for absolute protection of opinions." *Celle*, 209 F.3d at 178. In making this determination,

8

> the Court considers a non-exclusive list of factors that includes: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Elias v. Rolling Stone LLC*, 872 F.3d 97, 110 (2d Cir. 2017) (cleaned up). That said, if a "statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution." *Celle*, 209 F.3d at 178. In separating nonactionable statements of opinion from actionable statements of fact,

> courts must consider the content of the communication as a whole, as well as its tone and apparent purpose[,] . . . the over-all context in which the assertions were made[,] . . . the larger context in which the statements were published, including the nature of the particular forum . . . [and] other surrounding circumstances comprising the broader social setting.

*Brian v. Richardson*, 660 N.E.2d 1126, 1129–30 (N.Y. 1995) (internal quotation marks omitted).

On *de novo* review, we again agree with the district court that Plaintiff fails to allege actionable defamatory statements. To the extent that Defendants' statements are read as accusing Plaintiff of being a racist, the reasonable reader would have understood this to be an expression of opinion based on the widely circulated video of Plaintiff's encounter with Christian Cooper. *See, e.g.*, *Silverman v. Daily News, L.P.*, 11 N.Y.S.3d 674, 675–76 (App. Div. 2d Dep't 2015) (statements characterizing plaintiff's written matter as "racist writings" are non-actionable opinion); *Russell v. Davies*, 948 N.Y.S.2d 394, 395–96 (App. Div. 2d Dep't 2012) (statements characterizing plaintiff's essay as "racist and anti-Semitic" are non-actionable opinion); *cf. Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976) ("[T]he use of 'fascist,' 'fellow traveler' and 'radical right' as political labels . . . cannot be regarded as having been proved to be statements of

9

fact, among other reasons, because of the tremendous imprecision of the meaning and usage of these terms in the realm of political debate . . . ."). Plaintiff attempts to salvage her claim by arguing that Defendants' statements implied the existence of undisclosed facts upon which their opinion was based. However, we agree with the district court that the May 26 Statement—which did not on its face indicate that Defendants relied on any non-public information, and to the contrary specified that it was "following [Defendants'] internal review *of the incident in Central Park yesterday*," App'x at 52 (emphasis added); was made less than 24 hours after video of the Central Park incident was circulated widely and "became international news as a racial flashpoint," *id.* at 11 ¶ 1; and "took place in the midst of an ongoing national reckoning about systemic racism," *id.* at 66—would be understood by the reasonable reader as being based on the publicly available video of the incident. The same is true of the June 2 and July 6 Statements.[4]

Accordingly, we affirm the dismissal of Plaintiff's defamation claims.

\*\*\*

We have considered Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



---

[4] To the extent Plaintiff's claims are based on her contention that "Defendants performed no investigation, [and] conducted no internal review," Appellant's Br. 6, Plaintiff fails to plausibly allege that Defendant's statement that they were conducting a "review" is not substantially true.

10